## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re | ) | CASE No: BK-S 09-13257 MKN |
| | ) | |
| MANUEL BERNABE, and | ) | CHAPTER 11 |
| LYDIA BERNABE, | ) | |
| Debtors in Possession | ) | IN CHAPTER 11 PROCEEDINGS |
| | ) | |


## CHAPTER 11 PLAN OF

## REORGANIZATION
## #2

## *of*


## MANUEL BERNABE
## and
## LYDIA BERNABE


Submitted by:

COLEMAN LAW ASSOCIATES, APLC
Attorney for MANUEL AND LYDIA BERNABE
9708 S. Gilespie Street, Ste. A-106
Las Vegas, NV 89183
phone (702)699-9000
fax (702) 699-9006

## TABLE OF CONTENTS

ARTICLE I          DEFINITIONS....................................................................  pages 3-8

ARTICLE II         SUMMARY.......................................................................  pages 8-9

ARTICLE III        CLASSIFICATIONS OF CLAIMS...................................  pages 9-14

ARTICLE IV         TRANSFER OF CLAIMS.............................................  page 14

ARTICLE V          MEANS FOR EXECUTION OF THE PLAN....................  page 15

ARTICLE VI         MODIFICATION OF THE PLAN....................................  pages 15-16

ARTICLE VII        RETENTION OF JURISDICTION...................................  pages 16-18

ARTICLE VIII       MISCELLANEOUS PROVISIONS..................................  page 18

ARTICLE IX         ALLOWANCE OF ADMINISTRATIVE CLAIMS...........  page 18

ARTICLE X          RIGHTS OF PRIORITY CLAIMANTS...........................  page 18

ARTICLE XI         RIGHTS OF SECURED CLAIMANTS...........................  page  19

ARTICLE XII        RIGHTS OF UNSECURED CLAIMANTS.......................  page 19

ARTICLE XIII       EXECUTORY CONTRACTS..........................................  pages19-20

ARTICLE XIV        MISCELLANEOUS PROVISIONS..................................  page 20

ARTICLE XV         CRAM DOWN....................................................................  page 20

ARTICLE XVI        PAYMENT OF SECTION 1930 FEES...............................  page 20

ARTICLE XVII       REVOCATION OF PLAN...................................................  pages 20-21

ARTICLE XVIII      DISCHARGE.......................................................................  page 21

ARTICLE XIX        INCORPORATION OF DISCLOSURE STATEMENT........page 21

## DEBTORS' PLAN OF REORGANIZATION

MANUEL AND LYDIA BERNABE, the Debtors-in-Possession (hereinafter "Debtors") in this Chapter 11 bankruptcy, hereby proposes the following Plan of Reorganization, by through their attorney of record, COLEMAN LAW ASSOCIATES, APLC, requesting acceptance of the Plan by their creditors, and confirmation of the Plan by the court.

## ARTICLE 1
## DEFINITIONS

The following terms, when used in this Plan of Reorganization, shall have the following respective meanings:

### 1.01 "Administrative Claim"

This term shall refer to every claim to an expense of administration of the reorganization case including the actual and necessary expenses of preserving and making a disposition of the assets of the Debtor, any actual and necessary expenses of operating the business, and all allowances, including professional fees, costs, and U.S. Trustee's fees, and other claims approved by the Court in accordance with the provisions of the United States Bankruptcy Code.

### 1.02 "Administrative Claimant"

This term shall mean any Person, including a Professional, entitled to payment on account of an Administrative Claim.

### 1.03 "Allowed Amount"

This term shall refer to every claim: (A)(i) as for which a Proof of Claim has been filed with the Court in the time fixed by the Court or, if such claim arises from the Debtor's rejection of an executory contract, if any, from thirty (30) days after the Effective Date of the Plan, or (ii) which Debtor have listed or scheduled, as of the effective date of the Plan, as liquidated in an amount undisputed; and in either event: (B) (i) as to which no objection to the allowance of such

claim, or requests for subordination thereof which (if granted) will effect the distribution to the creditor asserting the claim, has been filed within any applicable time period fixed by the Court, or (ii) as to which the Order allowing such claim and establishing (if applicable) its priority has become final and non-appealable.

### 1.04 "Bankruptcy Code:"

_____ This term shall refer to Title 11 of the United State Code, as now existing and hereafter amended.

### 1.05 "Business Day"

This term shall mean any day other than Saturday, Sunday, a legal holiday or a day on which national banking institutions in Nevada are authorized or obligated by law or executive order to close.

### 1.06 "Claim"

This term shall refer to a right of payment from the Debtor's Estate, which is evidenced by a timely filed Proof of Claim which is allowed by the Court, or is a Proof of Claim is not filed by the Creditor, a right which otherwise appears in the Debtors' bankruptcy schedules and (i) is not listed as disputed, contingent, or unliquidated, (ii) has not been resolved by Final Order of the Court in this reorganization case, or (iii) which has been otherwise satisfied.

### 1.07 "Class"

This term shall mean any class into which Claims are classified.

### 1.08 "Confirmation"

This term shall mean the entry by the Bankruptcy Court of an order confirming the plan in accordance with Chapter 11 provisions of the Bankruptcy Code.

### 1.09 "Confirmation Date"

This term shall refer to the date set by the Court pursuant to §1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan.

### 1.10 "Confirmation Order"

This term shall refer to an order entered by the Court confirming the Plan and any all supplemental Orders confirming amendments to the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

### 1.11 "Court"

This term shall refer to the United States Bankruptcy Court for the District of Nevada, including the Bankruptcy Judge presiding in the Chapter 11 case of the Debtors.

### 1.12 "Creditor"

This term shall refer to all creditors of the Debtors holding claims for debt, liabilities, demands or claims of any character whatsoever, whether or not such claim is an "allowed claim," encompassed within the statutory definition set forth in Section 101(10) of the Bankruptcy Code.

### 1.13 "Creditors Committee"

This term shall refer to the Creditors Committee appointed by order of the Court, the members thereof and successor members. No creditors committee was appointed in this proceeding.

### 1.14 "Debtors"

This term shall refer to MANUEL and LYDIA BERNABE, individuals, who are the Debtors of record in the instant case.

### 1.15 "Debtors' Assets"

This term shall mean all right, title and interest in and to all property of every kind of nature, whether known or unknown, owned by Debtors or the Estate, including, but not limited to, and cash, real property interests, tax refunds, equipment, furniture, or other tangible property, accounts receivable, work in process, contract rights, insurance policies, intangible property, books and records, and whether known or unknown, causes of action, including, but not limited to, (i) all claims and rights against insiders and affiliates of Debtors and third parties and (ii) all claims and rights arising under or related to the Bankruptcy Code, including but not limited to, §§ 362, 505, 506, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code.

### 1.16 "Disbursing Agent"

This term shall refer to the party who is responsible for disbursing funds for payment according to the terms of a confirmed plan.

### 1.17 "Discharge"

This term shall refer to the result of the completion of payments under the terms of the

confirmed plan. Completion of these payments will, and does fully discharge Debtors as provided in §1141(d) of the Bankruptcy Code and the Plan does not provide for exceptions to discharge under 1141(d)(3), except as to any postpetition claims.

### 1.18 "Disputed Claim"

_____This term refers to a claim against the Debtor (a) that is listed in the Debtors' schedules as disputed, contingent, or unliquidated; (b) that is listed in the Debtor's schedules as undisputed, liquidated, and not contingent as to which a proof of claim has been filed with the Court, to the extent the proof of claim amount exceeds the scheduled amount; (c) that is not listed on the Debtor's schedules but as to which a proof of claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection is related to the allowance of only part of a claim, such claim shall be a Disputed Claim only to the extent of the objection.

### 1.19 "Distribution Date"

This term refers to the date designated by the Plan on which distribution of Dividends to Allowed Unsecured Claims.

### 1.20 "Dividend"

_____This term refers to a payment in cash in the amount provided by the Plan for a designated class of claimants.

### 1.21 "Effective Date"

_____This term refers to the thirtieth (30th) day following the date of the order confirming the plan, if no notice of appeal is timely filed, or if a notice of appeal is filed, during which time no motion for stay pending appeal is granted or superceding bond is approved and filed, then it shall be the date on which the order confirming plan is a final order.

### 1.22 "Final Decree"

_____This term refers to the order of the Court entered after all payments and distributions of monies called for under the Plan have been made (i) discharging the Trustee and canceling his bond, (ii) making provision by way of injunction or otherwise as may be equitable, and (iii) closing the reorganization case.

### 1.23 "Final Order"

_____This term refers to an order of the Court which, not having been reversed, modified or amended and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become conclusive of all matters adjudicated thereby and is in full force and effect.

### 1.24 "Insider"

_____This term shall refer to (i) a relative of the Debtor or of a general partner of the Debtor; (ii) a partnership in which the Debtor is a general partner; (iii) a general partner of the Debtor; or (iv) a corporation of which the Debtor is a director, officer, or person in control.

### 1.25 "Lien"

This term shall refer to a mortgage, pledge, judgment lien, security interest, charging order, or other charge or encumbrance on property which is effective under applicable law as of the date of the commencement of the reorganization case.

### 1.26 "Plan"

_____This terms shall refer to this Plan of reorganization and every subsequent modification thereof, if any, filed by the debtor.

### 1.27 "Priority Claim"

This term shall refer to those allowed claims which are entitled to priority provided for under § 507(a) of the Bankruptcy Code.

### 1.28 "Pro Rata Share"

_____This term shall refer to the amount which is the result of multiplying the monies available for distribution to a named class of creditors by that fraction in which the numerator is the allowed amount of a particular claim in the named class and the denominator is the total amounts of all the claims in the named class.

### 1.29 "Reorganized Debtor"

This term shall refer to the Debtors after entry of the Order Confirming the Plan.

### 1.30 "Secured Claim"

_____This term shall refer to the claim of any creditor secured by liens on property, which liens are valid, perfected, and enforceable under applicable law, and are not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and are duly established in this

case, to the extent of the value of the security, as determined in accordance with §506 of the Bankruptcy Code.

### 1.31 "Substantial Consummation"

_____This term shall refer to that which occurs upon the payment of the first Distribution under the Plan.

### 1.32 "Unsecured Claim"

_____This term shall refer to all business claimants or other claimants of every nature, holding claims for unsecured debts, liabilities, demands, or claims of every character whatsoever.

### 1.33 "Unsecured Creditor"

_____This term shall refer to the holder of an unsecured claim.

## General Terms and Conditions

_____This Plan is intended to deal with all claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to §502(a) of the Bankruptcy Code. However, only those claims allowed pursuant to §502(a) of the Bankruptcy Code will receive treatment afforded by the Plan.

## ARTICLE II:SUMMARY

_____This Plan of Reorganization, (the **"Plan")** under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§101, *et. seq.* (the "**Bankruptcy Code")** proposes to pay creditors of Manuel and Lydia Bernabe, the above captioned debtors and debtors-in-possession, (the "**Debtors")** from the reorganization of their finances.

_____This Plan provides for 2 classes of secured claims and 1 class of unsecured claims.  Unsecured creditors holding allowed claims will receive distributions totaling $1000.00 per quarter. These payments will continue until such time as the Debtors' property in the Phillippines sells, at which point Debtors will use the funds realized to pay unsecured creditors.  This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan, or as agreed

by the holder of such administrative or priority claim.

_____All creditors should refer to Articles III through V of this Plan for information regarding precise treatment of their claims.  A Disclosure Statement (the "**Disclosure Statement")** that provides more detailed information regarding this Plan and the rights of creditors was circulated with this Plan.  Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.  If you do not have an attorney, you may with to consult with one.

## ARTICLE III. -CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan of Reorganization constitutes the Chapter 11 plan of reorganization of the Debtors. All claims against the Debtors are placed in classes (each a **"Class" )** as designated by Classes 1 through 3.

### Unclassified Claims- General Information

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Debtors did *not* place the following claims in any class.

**Administrative Expenses**

Administrative expenses are costs or expenses of administering the Debtors' Chapter 11 case which are allowed under section 507(a)(2) of the Bankruptcy Code.  Administrative expenses also include the value of any goods or services sold to the Debtors in the ordinary course of business. The Bankruptcy Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to different treatment.

**Priority Tax Claims**

Priority tax claims are unsecured income, employment, and other taxes described 507(a)(8) of the Bankruptcy Code.  Debtors are current with their tax filings and do not anticipate any amount being owed as a priority tax claim.

**Priority Unsecured Claims**

This type of claim includes those that are referred to in §507(a)(1),(4),(5),(6), and (7) of the

Bankruptcy Code.  The Bankruptcy Code requires that each holder of such claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  A class of holders of such claims, however, may vote to accept different treatment.  As of the date of this Disclosure Statement, the Debtors do not have any Priority Unsecured Claims.

## PLAN PROVISIONS: CLASSES

### Unsecured Claims- General Information

The Debtors' Schedules contain a list of unsecured claims.  This list was compiled from the data from the Debtors' records and may not be entirely accurate. To date, there are $39,374.18 in unsecured claims and $2,179,344.05 in secured claims filed with the Bankruptcy Court.

The last day to file a proof of claim is to be set by the Court.  The Debtors have reviewed both the schedules and the claims filed to determine the accuracy of both.  Some of these creditors filed their Proof of Claim as secured claims and some creditors filed a Proof of Claim containing amounts different from those scheduled by the Debtors.  Debtors will file an amended Schedule F to reflect these changes in claim status.

The Debtors reserve the right, in the event they are unable to make the full payment per quarter to any Class of Creditors, ("the affected Class"), in any given year, to pay the unpaid amount over the remaining three quarters of that year.  In the event the Debtors are unable to make a quarterly payment, the Debtors shall send notice of inability to make the payment to all of the Creditors in the affected Class.  The Creditors in the affected Class shall have the right, with reasonable notice, to audit the Debtor's books and records from the prior quarter to determine that the Debtors were in fact not able to make a payment during that quarter.  Such a delay in payment shall not constitute a default under the Plan of Reorganization. The Debtors shall be allowed only one missed payment per Class per 12 month period and shall bring the missed payment current during the following 11 months.

The Debtors' Plan of Reorganization will provide for classification of creditors in accordance with the United States Bankruptcy Code.  This Plan proposes the usage of Debtors' income from business operations and employment with the net profits to be utilized to fund the Plan until such time as the Phillippines land sells. At that point, unsecured creditors will receive distributions following the sale of this property. Under the instant Plan, claims of Creditors and

ownership interests are classified as follows:

## PLAN CLASSIFICATION CHART:

| CLASS/ PROPERTY DESCRIPTION | IMPAIRMENT | TREATMENT |
|---|---|---|
| **CLASS 1: Secured Claims** | **Unimpaired: deemed to have accepted the Plan pursuant to §1126(f).  Not entitled to vote.** | **Paid in full in accordance with the terms of its related note and mortgage.  This Class is divided into 4 subclasses.** |
| **CLASS 2:** | **Impaired: entitled to vote.** | **Secured Creditors will receive payment on their claim up to the value of their security; the remainder may fall to Class 3.  This Class is divided into 4 subsections.** |
| **CLASS 3:** | **Impaired: entitled to vote.** | **Unsecured Creditors will receive $1000 per quarter until such time as the land in the Phillipines sells. For more detailed information regarding the proposed sale of land, see below section entitled "Sale of Phillippines Land."** |

## CLASS 1: UNIMPAIRED SECURED CLAIMS

**Class 1A: UNIMPAIRED SECURED CLAIMS- Secured Claim of Countrywide/BAC Home Loans**

Class 1A consists of the obligation owed to BAC Home Loans/Countrywide in the amount of $664,106.95 and secured by a first deed of trust against Debtor's residence at, 9550 Gondolier Street, Las Vegas, Nevada 89178.  The monthly debt service on this claim is approximately $4391.00. Debtors are informed and believe that they are now nearly current in this obligation, post petition, as

the post-petition arrears owed on this property is being paid through an adequate protection order.

**Class 1B. UNIMPAIRED SECURED CLAIMS- <u>Secured Claim of Toyota Motor Credit</u>**

Class 1B consists of the obligation owed to Toyota Motor Credit in the amount of approximately $7448.88, secured by Debtors' 2006 Toyota Corolla. Debtors' daughter drives this car and makes the payments. Debtors are informed and believe that this obligation is current, both before and after the filing of the instant bankruptcy. This claim is not impaired.

**Class 1C. UNIMPAIRED SECURED CLAIMS- <u>Secured Claim of American Honda Finance Corporation</u>**

Class 1C consists of the obligation owed to American Honda Finance Corporation in the amount of approximately $15,818.96, secured by Debtors' 2007 Honda Pilot. Debtors are informed and believe that this obligation is current, both before and after the filing of the instant bankruptcy. This claim is not impaired.

**Class 1D. UNIMPAIRED SECURED CLAIMS- <u>Secured Claim of Phillippines National Bank</u>**

Class 1D consists of the obligation owed to Phillippines National Bank in the amount of approximately $324,717.92, secured by the parcel of land located at "Quirino Avenue corner of Kabihasnan Street (Victor Medina), Barangay San Dionisio, Paranaque City, Metropolitan Manila, Phillippines." The debtors have entered into an adequate protection order on this property. The Debtors are paying current on this property. This claim is not impaired.


<u>**CLASS 2: SECURED CLAIMS SUBJECT TO BIFURCATION**</u>

**Class 2A. SECURED CLAIMS SUBJECT TO BIFURCATION- <u>Secured Claim of America's Servicing Company</u>**

Class 2A consists of the obligation owed to America's Servicing Company in the amount of $245,000.00, secured by the Debtors' property located at 6363 Pinion Jay Avenue, Las Vegas, NV 89148. This debt will be paid at the rate of 6% over 30 years. The remainder of this creditor's claim may fall to Class 3 in connection with confirmation of the Plan.

**Class 2B. SECURED CLAIMS SUBJECT TO BIFURCATION- <u>Secured Claim of Wells Fargo</u>**

Class 2B consists of the obligation owed to Wells Fargo in the amount of $120,000.00, secured by the property located at 9792 Sage Grove Court, Las Vegas, NV 89147. This debt will be paid at the

rate of 6% over 30 years.  The remainder of this creditor's claim may fall to Class 3 in connection with confirmation of the Plan.

**Class 2C. SECURED CLAIMS SUBJECT TO BIFURCATION- <u>Secured Claim of Select Portfolio Servicing</u>**

_____Class 2C consists of the obligation owed to Select Portfolio Servicing in the amount of $180,000.00, secured by the property located at 8605 Copper Falls Avenue, Las Vegas, NV 89129. This debt will be paid at the rate of 6% over 30 years. The remainder of this creditor's claim may fall to Class 3 in connection with confirmation of the Plan.

## <u>CLASS 3: GENERAL UNSECURED CLAIMS</u>

Class 3 consists of all general unsecured claims.  The payment made by Debtors shall equal $1000.00 per quarter, paid quarterly over 20 payments.  Payments will begin upon Confirmation. Debtors will be attempting to sell their land in the Phillippines, which appears to have substantial equity. Pending court approval of a purchase agreement, Debtors will use funds generated from the sale of this property to distribute to their Class 3 creditors.  More details regarding this arrangement will be detailed below in the section entitled **Sale of Phillippines Land.**

The Plan provides for payment of Class 3 claims, on a pro-rata basis, of allowed unsecured claims, the exact distribution schedule depending upon the allowed amount of claims having higher priority, the number of such claims, and the amount of funds available. Unsecured claims also will be paid out of the funds contributed from any source to the Plan, and after the allowed amounts of all claims having a higher priority are paid in full.  Debtors propose to pay a percentage of these claims, and assuming that all filed or undisputed claims are allowed, and contingent upon the sale price of the Phillippines land being as predicted below, distribution is expected to be around 20-25 percent of all allowed claims.

Unsecured  general claims, including those unsecured portions held by the mortgage lenders on the 4 residential properties, will be paid pro rata, after other claims having higher priority, being administrative claims, priority claims, and secured claims, to the extent that funds are available. Debtors seek a discharge of any unsecured general claims which are not proposed to be paid by the

Plan. Therefore, this class is **impaired**.

**Sale of the Phillippines Land**

      As detailed in the accompanying disclosure statement, Debtors propose to sell their parcel of land in the Phillippines. Debtors owe a secured debt of roughly $324,717.92 to Phillippine National Bank on this land. **See Exhibit C to the Disclosure Statement: Phillippines Property Appraisal with Conversion Chart.** Although valuing overseas property is difficult, Debtors anticipate that the property will bring approximately $200,000.00 in net proceeds following a non-emergency sale. These funds would be paid to unsecured creditors, subject to a setoff amount as described below.

**Setoff Amount**

      To retain this land until the time of the sale, Debtors will keep making payments on the monthly debt service of approximately $2900.00 per month. Debtors will engage all efforts necessary to effectuate a quick sale at the best price possible so as to bring the most return to unsecured creditors, (see **"Terms of Sale of Phillippines Land" section in accompanying Disclosure Statement)** but the length of time that it may take to find a qualified and able buyer cannot be readily predicted. Therefore, upon finding a buyer and obtaining Court approval for the sale of this land, Debtors will be reimbursed their carrying costs for maintaining payments on this land for the months paid from confirmation until the sale is finalized. This reimbursement amount will be capped at 15% of the net profit of the land. All other amounts realized from the sale of this land will be turned over to unsecured creditors.

**Anticipated Return for Unsecured Creditors**

      It is anticipated that the sale of the Phillippines Land will bring a roughly 20-25% return for unsecured creditors. **See accompanying Disclosure Statement for further information regarding calculation of the anticipated percentage of return for unsecured creditors.**

### ARTICLE IV:Transfer of Claims

      In the event that any creditor shall transfer its claim, it shall do so only in compliance with the Bankruptcy Rule 3001, and it shall promptly notify the Debtors in writing of such transfer. The Debtors shall be entitled to assume that no such transfer of any claim has been made by any

creditor until after the compliance and receipt of such notice.  Each transferee of any claim shall take the claim subject to the provisions of the Plan and any request made, waiver or consent given, or other action taken under the Plan, and except as expressly otherwise provided in the notice.  The Debtors shall be entitled to assume conclusively that the transferee named in the notice shall thereafter be vested with all the rights and powers under the Plan of the transferor with respect thereto.

## ARTICLE V: Means for execution of the Plan

### Plan Distributions:

Until such time as their property sells, Debtors will dedicate their net employment income to the payments in the plan.  The total amount paid to unsecured creditors through the Plan shall be determined by a variety of factors which are explained above, but is estimated to be around 20-25%.

No distribution shall be made from the Plan to creditors the claims of which are secured by Debtor's personal residence except the arrears on Debtors' first mortgage, the payment to Philippine National Bank for payment on the Phillippines Land, Toyota Motor Credit, or to American Honda Finance, as these claims are being paid in the ordinary course by Debtors in accordance with the contracts with the respective creditors.

Other than as stated in the immediately preceding paragraph, distribution of the $ 1000.00 quarterly payment will begin in accordance with the priority set forth in the United States Bankruptcy Code, to allowed unsecured creditors, to the extent funds are available, on the effective date of the Plan.

## ARTICLE VI: Modification of the Plan

Debtors retain the absolute right to modify this Plan in accordance with the provisions of the Bankruptcy Code.  In this regard:

a. modifications may be proposed in writing by Debtors at any time prior to confirmation provided that the Plan, as modified, meets the requirements of the Bankruptcy Code.

b. The Plan may also be modified by Debtors at any time after the confirmation, and before its substantial consummation providing that the Plan, as modified, meets the

requirements of the Bankruptcy Code and the circumstances justify the modification.

        c.  Any holder of an Allowed Claim that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the modified Plan unless, within the time fixed by the Court, such claim holder changes its previous acceptance or rejection.

        d. Every modification of the Plan will supercede the previous version of the Plan. As superceded, the previous version of the Plan will be in the nature of a withdrawn or rejected settlement proposal and will be null, void, and unusable by the Debtors or any other party for any purpose whatsoever with respect to the contents of the modified version of the Plan.

**Discharge**

The Chapter 11 discharge extends to all parties who have claims and who have been given notice of the filing of the bankruptcy or have constructive knowledge of the bankruptcy case in time to allow a timely filing of a Proof of Claim.

Confirmation of the Plan pursuant to the Bankruptcy Code shall discharge and release Debtors, as individuals, from any and all debts dischargeable under the Bankruptcy Code.  In addition, without limiting the generality of the foregoing, the rights and payments provided in the Plan shall be in exchange for and in complete satisfaction, discharge and release of all claims of any nature whatsoever including interest accrued thereon, from and after the applicable petition date against Debtors, or any of their exempt assets.

All claims against Debtors shall be satisfied through the execution of the Plan or discharged and released in full and all creditors and holders of claims shall be precluded from asserting against Debtors, or their assets or property claims based upon an act, omission, transaction, or any other activity of any kind that occurred prior to the confirmation date of the Plan.

Debtors retain the right to obtain any discharge available under U.S.C. §1141 under any theory.  If the assets of Debtors are liquidated, the proceeds therefrom shall be distributed in accordance with the provisions of the Bankruptcy Code and the confirmed Plan.  If the Debtors are entitled in any respect to a discharge of some or all of their obligations, they retain the right to seek the same.

**ARTICLE VII: Retention of Jurisdiction**

Notwithstanding confirmation of this Plan, the Court shall retain jurisdiction until this Plan

has been fully consummated, for the following purposes:

      a. to determine whether any claim is allowable or payable, or any objection thereto (or the appropriate proceeding) by the Debtors or by any other party in interest entitled to proceed in that manner.  As part of such retained jurisdiction the Court will continue to determine the allowability of administrative claims and any requests for payment thereof, including professional fees and costs which are administrative claims classified as Class 1 claims.

      b. to determine any dispute which may arise regarding the interpretation of any provision of this Plan.  The Court shall also retain jurisdiction to correct any defect, the curing of any omission of the reconciliation and inconsistency in this Plan or in the Order of Confirmation as may be reasonably necessary to carry out the purposes and intention of this Plan. In addition, the Court will retain jurisdiction for the enforcement and interpretation of the terms and conditions of the Plan and the Order of Confirmation issued with regard thereof.

      c. to facilitate the consummation of this Plan by entering, consistent with the provisions of this Plan, any further necessary or appropriate Order(s) regarding the enforcement of this Plan and any provisions thereof. This shall include the entry of any Order including injunctions necessary to enforce the title, rights and powers of Debtors' Plan and the imposition of such limitations, restrictions, terms and conditions of such title, rights and powers as the Court may deem necessary, just and proper.

      d. to determine all questions and disputes regarding title to the assets fo the estate and determination of all causes of action, controversies, disputes, conflicts, whether subject to an action pending as of the date of confirmation between Debtors and any other party.  The Court shall retain jurisdiction to adjudicate any claim including, but not limited to the adjudication of any and all "core proceeding" under 28 U.S.C. §157(b) which may deem appropriate to initiate and prosecute.

      e. to adjudicate the classification of claims of any creditor and the re-examination of a claim which may have been allowed for the purpose of voting, and the determination of such objections as may be filed to the creditors' claims. The failure by the Debtor to object or examine such claim for the purpose of voting shall not be deemed as a waiver of the Debtors' right to object or re-examine the claim in whole or in part as provided herein.

      f. to consider any modification of this Plan of Reorganization proposed prior to, or after,

the confirmation of and the entry of Order of Confirmation pursuant to §1127 of the Bankruptcy Code.

g. for the purposes of entry of a final decree concluding and terminating the reorganization case.

## ARTICLE VIII: Miscellaneous Provisions

**Disbursement:**

The disbursing agent for all payments made under the Plan shall be MANUEL AND LYDIA BERNABE, Debtors *or* a professional to whom they may delegate this duty.

All property of the estate shall become the property of the Debtors once the plan is fully consummated and shall be deemed vested in the Debtors.

The entry of an Order confirming the Plan shall serve to release the Debtors from liability for any claim dealt with in the Plan to any extent other than that provided for in the Plan.

## ARTICLE IX: Allowance of Administrative Claims

Each administrative claimant shall be required to seek court determination of status as an administrative creditor, and as to the reasonableness of the claim. Debtors, as well as any other affected party, retain the rights to object to the allowance of any such administrative claims. With the exception of counsel for Debtors, any claimant, having an otherwise allowed or allowable claim, who does not bring a motion to determine administrative status within ninety (90) days following the confirmation of the Plan, shall be deemed to hold an unsecured claim without priority, and shall receive the treatment of that class.

## ARTICLE X:Rights of Priority Claimants

All claimants having a claim of the kind specified described in 11 U.S.C. §507(a)(7) will receive on account of such claim deferred payments, over a period not exceeding five years after the date of assessment of such claim, of a value, as of the effective date of the Plan, to the allowed amount of such claim.

Except as otherwise might be agreed, the Internal Revenue Service shall receive on account

of its priority claims deferred cash payments commencing on the effective date of the Plan and continuing monthly thereafter.

### ARTICLE XI: Rights of Secured Claimants

Notwithstanding any other provision in the Plan, no secured claimant shall be required to accept less than the present value of the amount which would be received if the Debtor's property were liquidated under Chapter 7 of the Bankruptcy Code, unless such secured creditor agrees to the contrary. Additionally, notwithstanding any other provision in the Plan to the contrary, in any sale or auction of the assets of the Debtors pursuant to the Plan, secured creditors may avail themselves of any right conferred upon them by the Bankruptcy Code or obtained by them from the Bankruptcy Court.

### ARTICLE XII: Rights of Unsecured Claimants

Notwithstanding any other provision in the Plan, no claimant holding an unsecured claim without priority shall be required to accept less than the present value of the amount which would be received by such claimant if the Debtor's property were liquidated under Chapter 7 of the Bankruptcy Code, unless such creditor holding an unsecured claim without priority agrees to the contrary. See **Liquidation Analysis section of accompanying Disclosure Statement for further information regarding potential liquidation value of the Debtors' estate.**

### ARTICLE XIII: Executory Contracts

Debtors intend to accept the leases on their rental properties located at 9792 Sage Grove Court, as well as 8605 Copper Falls Avenue.  Debtors intend to reject the rental lease for the property located at 4411 East Azure, as they are surrendering their interest in this property.

Debtors' company, L and M Residential Care, also has 3 leases with patients to provide care at their other properties. Debtors intend to accept these leases.**(See Exhibit D, List of Leases to be Assumed or Rejected).**

### ARTICLE XIV: Miscellaneous Provisions

_____ The disbursing agent for all payments made under the Plan shall be Debtors or a professional

to whom they may delegate this duty.  All properties of the estate shall become the property of the Debtors once the Plan is fully consummated and shall be deemed vested in Debtors.  The entry of an Order confirming the Plan shall serve to release the Debtors from liability for any claim dealt with in the Plan to any extent other than provided for in the Plan.

## ARTICLE XV: Cram-Down(11 U.S.C. 1129(b)

_____   If all of the applicable requirements for confirmation of a plan are met, other than the requirement set forth in 1129(a)(8), to wit: that each impaired class accept the Plan, Debtors request that the Plan be confirmed notwithstanding such requirement if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

## ARTICLE XVI: Payment of Section 1930 Fees

All fees required by Section 1930 have been paid, or if not paid, will be paid on the effective date of the Plan.

## ARTICLE XVII: Revocation of Plan

The Debtors reserve the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans.  If the Debtors revoke or withdraw a Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in this Plan shall (a) constitute a waiver or release of any Claims by or against the Debtors or any other entity; (b) prejudice in any manner the rights of the Debtors or any other entity; or (c)constitute an admission, acknowledgment, offer or undertaking of any sort by the Debtors or any other entity.

**ARTICLE XVIII**: **Discharge**

The Chapter 11 discharge extends to all parties who have claims and who have been given notice of the filing of the bankruptcy or have constructive knowledge of the bankruptcy case in time to allow a timely filing of a Proof of Claim.

Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments under this Plan, or as otherwise provided for in §1141(d)(5) of the Code. The Debtors will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

All claims against Debtors shall be satisfied through execution of the Plan or discharged and released in full and all creditors and holders of claims shall be precluded from asserting against Debtors, or their assets or property claims based upon an act, omission, transaction, or any other activity of any kind that occurred prior to the confirmation date of the Plan.

Debtors retain the right to obtain any discharge available under 11 U.S.C. 1141 under any theory. If the assets of Debtors are liquidated, the proceeds therefrom shall be distributed in accordance with the provisions of the Bankruptcy Code and the confirmed Plan. If the Debtors are entitled in any respect to a discharge of some or all of their obligations, they retain the right to seek same.

**ARTICLE XIX: Incorporation of Disclosure Statement**

This Court-approved Disclosure Statement, as it may be amended in the Order of the Court approving same, and to the extent that it is not in conflict with the Plan of Reorganization is incorporated herein by reference as though set forth at length, since it may disclose information helpful in the confirmation of the Plan.

Dated this 24th day of March, 2010

/s/Elizabeth DeFlyer, Esq.
Elizabeth DeFlyer, Esq.

Nevada Bar No. 010021
9708 South Gilespie Street Ste. A-106
Las Vegas, NV 89183
Attorney for Debtors in Possession

_____